UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 08-127-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| BRANDON M. INMAN, | ) | **RE-SENTENCING** |
| | ) | **ORDER** |
| Defendant. | ) | |

*** *** *** ***

In a few months, Brandon M. Inman will complete his term of incarceration for

possessing child pornography. He will then begin a period of supervision. Initially, Mr. Inman

was sentenced to permanent supervision with standard sex offender conditions recommended by

the United States Probation Office for the Eastern District of Kentucky. This is consistent with

the practice in these cases as approved by all of the judges in this district. Neither the United

States nor Mr. Inman's counsel objected to the sentence. Nevertheless, on appeal the Sixth

Circuit has vacated the supervision portion of his sentence, seeking additional rationale and

expressing its own view on the appropriate length of supervision and conditions. After

additional examination, and for the reasons set forth below, Mr. Inman will be sentenced to a

modified lifetime term of supervised release with conditions as defined.

**I**

Mr. Inman was indicted in 2008 for violating 18 U.S.C. § 2252(a)(4)(B), possessing

media—sixty images and one video—containing visual depictions of minors involved in

sexually explicit conduct. [R. 1.] A number of pretrial issues followed, including inquiry into

Mr. Inman's competency, specifically his ability to understand the nature of the proceedings and aid in his defense. Ultimately, the Magistrate Judge recommended that he was competent, based in large part on the results of an examination conducted by Dr. Betsy Campbell at the Federal Medical Center in Lexington, Kentucky. [R. 28, 29.] This Court adopted that recommendation. [R. 30.] Subsequently, a motion for rearraignment was filed, [R. 32] a plea of guilty was accepted, [R. 36] and a Presentence Investigation Report was ordered to be completed.

Prior to the sentencing proceeding, Mr. Inman's counsel filed a motion for a downward departure. He argued for a below-Guidelines sentence for several reasons: Mr. Inman's zero criminal history points, his history of feeling lonely and depressed, that he possessed relatively few images, and his cooperation in the investigation. [R. 52.] A below-Guidelines term of imprisonment and a term of supervised release both extending beyond the guideline range and including the "intensive" conditions accompanying release was sought by counsel. [R. 52-1 at 9; *see also* R. 68 at 18-20 (transcript of Inman's counsel's sentencing request).] The United States opposed that motion, suggesting that the bottom of the sentencing guideline range (fifty-seven months), in addition to a ten-year period of supervised release, would satisfy the purposes of 18 U.S.C. § 3553(a). [R. 54.] The probation officer assigned to this case opined confidentially on the appropriate sentence as permitted by Federal Rule of Criminal Procedure 32(e)(3).

Ultimately, the Court concurred with the United States' recommendation that a term of imprisonment of fifty-seven months was sufficient but not greater than necessary. [R. 68 at 43.] The Court exceeded both parties' suggested time of supervised release and opted for a term of life supervision, conditioned upon compliance with numerous requirements. [*Id*. at 43-48; *see also* R. 58.] This term of supervision is in accord with the policy statement of U.S.S.G. § 5D1.2(b), which recommends the imposition of the statutory maximum term of supervision.

Significantly, neither the United States nor Mr. Inman objected to the sentence, the lifetime term of supervised release, or the specific conditions that were imposed. [R. 68 at 49.]

Many of the supervised release conditions that were imposed are customary and imposed on all parties placed on supervised release. [R. 58 at 3.] The majority of the remaining conditions are standard conditions imposed on defendants convicted of sex offenses in the Eastern District of Kentucky. As explained below, these conditions are the product of the United States Probation Office's experience and research, and they have been adopted by all district court judges in this district.

A short time after the sentence was imposed, Mr. Inman appealed. [R. 59.] The Court of Appeals for the Sixth Circuit vacated seven discrete parts of the sentence because insufficient rationale was offered. [R. 72, Ex. 1.] The Court deems this a limited remand as the "chain of intended events [was] articulated with particularity," and the scope of the remand is "unmistakable." *United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999).

On remand, this Court is instructed to reexamine the imposition of a lifetime term of supervised release. This is consistent with the Sixth Circuit's growing skepticism regarding the efficacy of lifetime supervision in this context. *See*, *e.g.*, *United States v. Maxwell*, 483 F. App'x 233 (6th Cir. June 13, 2012); *United States v. Thompson*, 2012 WL 6621353 (6th Cir. Dec. 20, 2012). *But see United States v. Lantz*, 443 F. App'x 135, 138 (6th Cir. Nov. 22, 2011) (upholding a sentence of lifetime supervision for a defender with an extensive history of sex offense convictions).

In addition, six supervised release conditions require reconsideration: (1) the mandatory drug testing requirement; (2) the mandate to provide information about prescription medications;

(3) the requirement that Probation have access to personal financial information; (4) the ban on consuming alcohol; (5) the prohibition on possessing or using technology with the capability of creating videos or pictures; and (6) the bar on using a post office box or storage facility . [R. 72, Ex. 1 at 7.]

The imposition of Mr. Inman's new sentence involved three hearings. On August 29, 2012, the Court re-appointed Mr. Inman's original counsel and outlined the process of resentencing. [R. 78.] On September 26, 2012, the United States and Mr. Inman's counsel advocated for the sentence each party believed was appropriate. [R. 80.] Mr. Inman was also given the opportunity to allocute. On May 9, 2013, the sentence was finally imposed along with a statement of reasons and the parties were asked if they had any objections to that sentence. Neither party objected. Now, the Court enters this order setting forth its findings. This process is akin to that used in *United States v. Cunningham*, 680 F. Supp. 2d 844 (N.D. Ohio 2010) and endorsed by the Sixth Circuit. *United States v. Cunningham*, 669 F.3d 723, 727-30 (6th Cir. 2012).

## II

### A

"The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." *Johnson v. United States,* 529 U.S. 694, 708-09 (2000). Supervised release is intended to be rehabilitative, especially for defendants who are imprisoned for relatively short periods of time, and is not envisioned as punishment. *United States v. Lewis*, 498 F.3d 393, 397 (6th Cir. 2007) (citing *Johnson*, 529 U.S. at 709). Yet, the focus of supervised release must not be exclusively on the defendant's well-being as protecting the public is an equally important value. [R. 72-1 at 2

(quoting *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007)).]  18 U.S.C. § 3583 establishes the process and the parameters for determining the appropriate length of the period of supervised release and the conditions with which a defendant must comply.  Because Mr. Inman was convicted of violating a provision of 18 U.S.C. § 2252, he has a mandatory term of not less than five years and not more than life. *See* § 3583(k).  The conditions he must follow during his time of supervised release, meanwhile, are governed by § 3583(d), which affords courts broad discretion.[1]

In some respects, concluding that an individual must endure the burden of lifetime supervision is the same as concluding that the nature of the crime committed does not lend itself to individual rehabilitation.  Rarely is federal supervised release imposed for more than a few years.  But in this context, the policymakers require a significant minimum period of supervision—five years—and evince a preference for permanent supervision.  There must be something about this category of crime that suggests to Congress that ongoing remedial

---

[1] Section 3583(c) mandates that a court consider particular factors listed in § 3553(a) in selecting whether a term of supervised release is warranted, and if a term is warranted, the amount of time that term should last and the conditions that should be applicable during that term.  This requires consideration of

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—(B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (4) the kinds of sentence and the sentencing range established for—(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> (5) any pertinent policy statement—(A) issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*See also United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008) (citing § 3553).

intervention and monitoring is needed.

As a judge, it is tempting to reconsider this conclusion. After all, the literature on this topic is far from conclusive. *See United States v. C.R.*, 792 F. Supp. 2d 343, 375-77 (E.D.N.Y. 2011) (discussing disputed research pertaining to relationship between viewing child pornography and committing sexual abuse); *United States v. Cunningham*, 669 F.3d 723, 731 (6th Cir. 2012) (same); *United States v. Quinn*, No. 12-2260, 2012 WL 4962433, at *1 (7th Cir. Oct. 18, 2012) (citing Richard Wollert, *The Implications of Recidivism Research and Clinical Experience For Assessing and Treating Federal Child Pornography Offenders: Written Testimony Presented to the U.S. Sentencing Commission* (Feb. 15, 2012) [hereinafter Wollert, *Treating Federal Child Pornography Offenders*][2]; *United States v. Johnson*, 588 F. Supp. 2d 997, (S.D. Iowa 2008) (citing Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (2008) favorably while criticizing Michael L. Bourke & Andres E. Hernandez, *The 'Butner Study' Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders*, 24 J. Fam. Violence 183-91 (2008)). But, it must be remembered that "defining crimes and fixing penalties are legislative functions." *United States v. McNerny*, 636 F.3d 772, 778 (6th Cir. 2011) (alteration in original) (quoting *United States v. Evans*, 333 U.S. 483, 486 (1948)).

Congress has delegated much of its responsibility for establishing penalties to the United States Sentencing Commission, through which the Sentencing Guidelines are promulgated. Although it cannot be stressed enough that Sentencing Guidelines are not mandatory, they are important guideposts that must be calculated properly and considered during every sentencing

---

[2] Wollert's written testimony is available at
http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20120215-

decision. *See, e.g.*, *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). The Guidelines further Congress's "preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences when necessary." *United States v. Booker*, 543 U.S. 220, 264-65 (2005).

With regard to child pornography offenses, Congress has given the Sentencing Commission's process less deference. *See generally McNerny*, 636 F.3d at 775-76, 778. This has the disadvantage of bypassing the Sentencing Commission's use of empirical data for calculating the Guidelines. *Id.* at 775-76. Congress, in superseding that process, has resorted to simply creating new offenses and increasing penalties as it sees fit. *Id.* In spite of all that, the penalties that exist for child pornography were legislatively created and reflect the electorate's perspective on the seriousness of this offense.

Ultimately, it is the judiciary's responsibility to impose consequences in accordance with the legislature's decisions. Sex offenders come before a federal judge with a legislatively imposed presumption that a significant period of supervision is required and a permanent period of supervision is preferred. This leaves a judge with the difficult task of answering this complicated question: What is it about a particular defendant that requires long-term or permanent supervision? The statutory framework provides some guidance, but this inquiry necessarily rests on the complex and nuanced intersection of psychology, criminology, and predictions about the future. The judiciary is simply not designed to be particularly good at this task. Consequently, to navigate this demanding path, judges must rely on resources trained for such a journey. These include psychologists, psychiatrists, social workers, as well as the

16/Testimony_15_Wollert_2.pdf recent testimony before the United States Sentencing Commission by Richard

professional staff of the United States Probation Office. And it is those very resources that have been and are now of critical importance to the Court's conclusions.

**B**

The § 3553(a) factors guide the next portion of the Court's analysis. In the process of completing Mr. Inman's Presentence Investigation Report (PSR), he was interviewed by an officer from the United States Probation Office in the presence of counsel. [R. 39 at 1.] Mr. Inman's answers during the interview caused counsel and the probation officer to question his "maturity level and developmental state." [*Id*.] Counsel responded by submitting a motion requesting a psychological evaluation. [R. 39.] That motion was granted, and a psychiatric examination with a psychosexual component was completed. [R. 43.] The post-evaluation report confirmed that Mr. Inman was immature for his age but able to understand the wrongfulness of his actions. [R. 48 at 5, 8.]

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Wollert.

Counterbalancing those facts, Mr. Inman had zero criminal history points, possessed relatively few images, and did not distribute or produce child pornography.

Deterrence and protecting the public, the second and third § 3553(a) factors, are of the

utmost concern because of the life-altering consequences the children who were photographed suffer as a result of this crime. Not only does each child have to cope with the memory of having sex acts performed on or with them, images of each child's face and/or body are circulated to countless parties and places, the limits of which will never be discovered. In addition, child pornography is only obtainable because there are consumers. To some extent, the "market" for child pornography may shrink—harming fewer children—if the number of consumers can be restricted. Nevertheless, the Court is mindful that deterrence and the public's protection must be informed by Congress's instruction that the purpose of supervised release is rehabilitation.

Educational and vocational training, as well as medical care, do not play a prominent role in the Court's decision about the length of Mr. Inman's term of supervision. But correctional treatment does; and whatever correctional treatment is deemed necessary can, quite obviously, only extend until supervision is terminated.

Nearly half of Mr. Inman's twenties have been spent in confinement as a result of this crime. This time was designed to, among other things, punish him and allow the debt he owed society to be repaid. But debts disappear once final payment is made—the metaphorical cloud dissipates and the former debtor proceeds unencumbered. For Mr. Inman, his debt is nearly paid, but the rehabilitation will, and must, continue to help ensure he does not find himself confronting charges like this again. The particulars of the correctional treatment that will be required in this case will be addressed below. For now, the Court will explain why it finds correctional treatment imperative.

First, the Court has concerns about recidivism, either through possessing, distributing, or producing child pornography, or through the manifestation of a contact sex offense. The forensic

report identified Mr. Inman as a moderate risk for recidivism. The report's predictive abilities were limited, and this conclusion is factored into the Court's decision. Research about recidivism also informs the Court's conclusion, but it does so to a minor degree because as noted the research is conflicted and unclear. Nevertheless, in consideration of Wollert's notation that "immature and young offenders are more worrisome," the Court finds that potential of recidivism weighs in favor of a modified lifetime term. *See* Wollert, *Treating Federal Child Pornography Offenders*, at 20. This is especially true when weighing the competing interests of infringement on Mr. Inman's freedom against the potential that a child could be victimized.

Second, the probation officer assigned to each defendant is an important source of information as the Court evaluates a defendant and eventually selects his sentence. It is the probation officer, after all, who actually interviews the defendant, not the court. Hence, probation officers are agents of the court, *see United States v. Christman*, 509 F.3d 299, 309-10 (6th Cir. 2007) (citation omitted), and serve to "provide the sentencing judge with as much information as possible to enable the court to make a just and informed sentencing decision." *Id.* at 310 (quoting *United States v. Johnson*, 935 F.2d 47, 50-51 (4th Cir. 1991)). Rule 32 of the Federal Rules of Criminal Procedure identifies the important role probation officers play in helping courts reach just sentences, and it recognizes that there are circumstances in which particular facts may be withheld from both parties and only shared with the sentencing judge. Fed. R. Crim. P. 32(d)(3), (e)(3). "For example, a probation officer's final sentence recommendation, diagnostic opinions, and confidential or sensitive information need not be disclosed." *Christman*, 509 F.3d at 309 (quoting *Johnson*, 935 F.2d at 51). Ultimately, a court is permitted to weigh any "information concerning the background, character, and conduct of a

person convicted of an offense," 18 U.S.C. § 3661, and, but for information that may be held in confidence, a defendant is afforded the opportunity to dispute any factual findings. Fed. R. Crim. P. 32(f).  In this case, the PSR prepared by the Probation Office and the confidential sentencing recommendation provided the Court with information that indicated substantial post-release support is advisable.

Third,  as elaborated on above, the Court looks to the Guidelines to aid it in establishing the parameters for a sentence.  Mr. Inman's term of supervised release is a within-Guidelines sentence. U.S.S.G. § 5D1.2(b).  Furthermore, a life term of supervision is recommended pursuant to the policy statement accompanying U.S.S.G. § 5D1.2: "If the instant offense of conviction is a sex offense, . . . the statutory maximum term of supervised release is recommended."

Two final aspects of § 3553(a) are in need of consideration.  The Court is instructed to consider a term of supervised release in context.  That is, similarly situated defendants—with regard for both the particular conduct and criminal history—should receive similar sentences. Following that instruction, the Court utilizes the Guidelines as a lodestar and varies its sentences when particular facts indicate a defendant is outside the main.  Acting otherwise makes it difficult to ensure unfair sentencing disparity does not take place. *See United States v. Stall*, 581 F.3d 276, 290 (6th Cir. 2009) (Rogers, J. dissenting).

Finally, the Court must consider restitution for the victims of the offense.  Victims are legion in this crime, but restitution is not a significant factor in the Court's sentencing decision because of Mr. Inman's lack of financial resources.

After all those considerations have been weighed, the Court concludes that lifetime supervision with automatic review at ten years is the appropriate term of supervised release.  The Probation Office is directed to monitor Mr. Inman as they do with all individuals on supervised

release.  But ten years from the date supervision begins, with consideration for the Court's calendar, a review of Mr. Inman's development and the necessity of continued supervision shall be conducted before the Court.  This review does not limit the Probation Office's ability to come before the Court prior to the ten year review and seek a modification.

For a young man, a lifetime of intrusions and limitations is a harsh consequence.  But in satiating his sexual desires, infinitely greater consequences have already been inflicted on innocent children.  It must be recognized that in rehabilitating individuals who obtain sexual stimulation from child pornography, the scales should be tipped in favor of imposing on the defendant rather than establishing a system whereby insufficient guardrails exist to help ensure this crime is not committed again.

## C

Conditions of supervised release are rendered in accordance with 18 U.S.C. §§ 3583(d), 3563(b), and U.S.S.G. § 5D1.3, in addition to input from the Probation Office.  Section 3583(d) sets forth several "explicit" conditions, which were dutifully applied: (1) "the defendant [shall] not commit another Federal, State, or local crime during the term of supervision"; (2) the defendant shall not "unlawfully possess a controlled substance"; (3) the defendant shall comply with the registration requirements of the Sex Offender Registration and Notification Act; (4) the defendant shall comply with DNA collection as directed by the USPO; and (5) the defendant shall "refrain from any unlawful use of a controlled substance and submit to a drug test within fifteen days of release on supervised release and at least two periodic drug tests thereafter as determined by the Court."

The remaining supervised release conditions were imposed under the authority of 18

13

U.S.C. § 3583(d)(1)-(3).  Courts may impose any condition that "reasonably relate[s] to the nature of the offense and the history and characteristics of the defendant and 'involve[s] no greater deprivation of liberty than is reasonably necessary' to serve the goals of deterrence, protecting the public, and rehabilitating the defendant." [R. 72, Ex. 1 at 2 (citing and quoting 18 U.S.C. § 3583(d)(1)-(2)).]  Further, each condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." § 3583(d)(3).  The statute makes these prerequisites conjunctive, meaning each of them must be satisfied before a condition is considered permissible.  "However, a condition need not satisfy every single factor and purpose within each of the first two requirements." *United States v. Minor*, 440 F. App'x 479, 482-83, (6th Cir. 2011) (quoting *United States v. Carter,* 463 F.3d 526, 529 (6th Cir. 2006)).  The Court levied "Standard" conditions of supervised release as delineated in U.S.S.G. § 5D1.3(c) and identified therein as "policy statements." *See* § 3583(d)(1)-(3).  "Special" conditions were also included in the judgment [R. 58 at 2].[3]

18 U.S.C. § 3603 ascribes "extensive authority" to probation officers. *United States v. Logins*, No. 11-2514, 2012 WL 5278589, at *3 (6th Cir. Oct. 26, 2012).  Probation officers shall explain the conditions of supervised release that have been imposed. § 3603(1).  They shall keep apprised of the conduct of the party on supervised release to the extent required by the court. § 3603(2).  Probation officers shall support the party being supervised in improving that party's conduct or condition using any suitable method that aligns with the court's order. § 3603(3). Probation Officers shall stay informed about the party's compliance with the imposed conditions. § 3603(7).  And probation officers shall "perform any other duty that the court may designate." § 3603(10).  Probation officers cannot impose punishment on defendants, but when "the court

---

[3] These are categorized as "discretionary" by § 3583(d).

makes the determination of whether a defendant must abide by a condition, and how . . . a defendant will be subjected to the condition, it is permissible to delegate to the probation officer the details of where and when the condition will be satisfied." *Logins*, 2012 WL 5278589 at *3-4 (quoting *United States v. Stephens*, 424 F.3d 876, 880 (9th Cir. 2005)).  In sum, probation officers have "broad statutory authority to advise and supervise persons on supervised release to improve the releasees' conduct and lives, and to perform any other duty that the court may designate." *United States v. Rodriguez*, 558 F.3d 408, 414-15 (5th Cir. 2009) (internal quotation marks omitted).

In utilizing probation officers' expertise in rehabilitating defendants and the grant of authority contained in § 3603(10), the Court routinely asks probation officers for input about appropriate supervised release conditions for particular defendants.  This is because probation officers are "essentially an investigative and supervisory 'arm of the court.'" *United States v. Pearson*, No. 08-20215, 2012 WL 2501118, at *3 (E.D. Mich. June 28, 2012) (quoting *United States v. Johnson*, 935 F.2d 47, 49 (4th Cir. 1991)).  A probation officer's "function is not so much to compel performance to a strict code of behavior as to supervise a course of rehabilitation." *Gagnon v. Scarpelli*, 411 U.S. 778, 784 (1973).  Accordingly, probation officers "ha[ve] been entrusted traditionally with broad discretion to judge the progress of rehabilitation in individual cases." *Id.*

For a period of time, sex offenders in the Eastern District of Kentucky were supervised based on special conditions that might vary, perhaps even considerably, depending upon the judge who imposed the sentence.  Over time, the district judges in this district, in consultation with the Probation Office, realized that imposing conditions in this manner resulted in

incomplete rehabilitation.  In response, the Probation Office was asked to set up a district-wide task force focused on rehabilitating sex offenders through the creation of a catalog of supervised release conditions.  These special conditions were designed to work in concert, ensuring that a defendant received holistic support while re-acclimating to society, and they were written based on the Probation Office's experiences, as well as interviews with an ever-increasing number of defendants convicted of sex offenses.  The task force drafted language for the conditions, and the judges of the Eastern District examined, revised, and adopted the language of each condition and the catalog as a whole.  This process has been repeated periodically, and in fact, revisions have taken place during the pendency of this appeal.

For several years, then, when a defendant was convicted of a sex offense, each of the sex offender special conditions was imposed.  This ensured that ample guardrails were in place to support a defendant throughout his time of rehabilitation.  As with supervised release generally, probation officers were empowered at any time to recommend reduced restrictions due to a defendant's compliance and development.  This was the state of affairs until the decision remanding this action was rendered.  In response, the Court will expound below on the general reason for the existence of each special condition and for the reason that particular conditions will be imposed on Mr. Inman.

**1**

Mandatory drug testing is required as an explicit condition of supervised release pursuant to 18 U.S.C. § 3583(d) except in particular cases.  As outlined in § 3563(a)(5), the drug testing requirement can be waived when a "defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant."  PSRs have been judged to bear "sufficient indicia of reliability to be considered by a district court when making a

factual determination." *Rodriguez*, 558 F.3d at 412.

Mr. Inman's PSR reports that he denied using alcohol or illegal drugs. [R. 61 at 10.] However, he was charged with five drug related crimes in 2004. [*Id.* at 6.] These charges were eventually dismissed by the state prosecutor, and out of that circumstance, Mr. Inman's mother and a co-defendant pled guilty to manufacturing methamphetamine. [*Id.*] Nevertheless, on the basis of § 3583(d)'s mandate, and in light of the criminal charges previously levied, the Court believes Mr. Inman's history justifies retaining this condition. He may not pose the highest risk for abuse, but his affiliation with illegal drugs was close enough in the past to face criminal charges.

Thus, the Court judges that his risk level exceeds the threshold of § 3563(a)(5) and the drug testing condition will be re-imposed. The condition will be modified so that after ten years on supervised release it will be terminated unless Mr. Inman's probation officer seeks an extension of this condition. *See* 18 U.S.C. § 3583(e)(1), (2); Fed. R. Crim. P. 32.1(c)(1)-(2).

**2**

The prescription drug condition is a special condition placed on Mr. Inman.[4] It will be re-imposed but modified.

_____

[4] The condition states:

The defendant shall provide to the United States Probation Office (USPO), within seven (7) days of release from the custody of the Bureau of Prisons, a written report, in a form the USPO directs, listing each and every prescription medication in the defendant's possession, custody, or control. The list shall include, but not be limited to, any prescription medication that contains a controlled substance and encompasses all current, past, and outdated or expired prescription medications in the defendant's possession, custody, or control at the time of the report.

The defendant shall notify the USPO immediately (i.e., within no later than 72 hours) if the defendant receives any prescription for a medication containing a controlled substance during the period of supervised release. The defendant shall provide the USPO such documentation and verification as the USPO may reasonably request and in a form the USPO directs.

The defendant must comply strictly with the orders of any physician or other prescribing source with respect to the use of all prescription medications. [R. 58 at 5.]

17

As outlined in myriad publications, prescription drug abuse—especially of prescription opiods—is a pervasive problem among rural areas in the Appalachian region. *See, e.g.*, *United States v. Ilayayev*, 800 F. Supp. 2d 417, 430-31 (E.D.N.Y. 2011) (citing many sources).  Kentucky is unquestionably among those states at the forefront of this problem. *See* Kent Durning, *No Pain No Gain?! Who Will Make the Greatest Sacrifices in Curbing Opioid Analgesic Diversion and Abuse*, 93 Ky. L.J. 199, 199-200 (2004).  More broadly, according to the Department of Justice, the use of controlled prescription drugs "ranks second only to the abuse of marijuana." National Drug Intelligence Center, U.S. Department of Justice, National Drug Threat Assessment 2011, at 1 (2011), *available at* http://www.justice.gov/archive/ndic/pubs44/44849/44849p.pdf; *see also Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 394-97 (2009) (Thomas, J. dissenting) (citing facts about prescription drug use among high school students).

Mr. Inman's past criminal charges indicate that law enforcement had probable cause he was involved in the illegal drug trade.  Although the charges were dismissed, and they were premised on methamphetamine production and distribution, he was in close proximity to criminal drug activity.  Prescription drugs have become such a large part of the drug trade that the Court will impose this condition again in the spirit of ensuring that his rehabilitation has the greatest chance of success.  However, because Mr. Inman's problems with illegal substances are relatively minimal, this condition will terminate after ten years unless the USPO seeks an extension.

**3**

To the uninitiated, the financial disclosure condition, which provides that Mr. Inman must "provide the probation officer with access to any requested financial information," seems to

be out of place in this context. Indeed, the Sixth Circuit was troubled by this condition because it found the link between the crime and this condition too attenuated in the absence of a more detailed explanation.

The Sixth Circuit is correct that this condition does not explicitly relate to the nature and circumstances of the offense or Mr. Inman's history and characteristics. But it does afford deterrence and protect the public. In practice, it establishes a means by which probation officers can monitor purchases and expenses. The experiences of probation officers were instrumental in designing this condition. They explained that access to financial data revealed, for example, purchases of prohibited electronic devices and internet services in excess of those previously approved. In essence, this condition allows the probation officer to triangulate his/her data, ensuring that a defendant accurately portrays his lifestyle. As a result, Mr. Inman will be deterred from violating his supervised release conditions, the public will be protected from additional crimes of the same nature, and rehabilitation will progress unhindered.

Two other important points should be noted with respect to this condition. First, this condition does not per se require Mr. Inman to do anything. The probation officer is merely authorized to examine financial information. Second, "a condition need not be perfectly proportionate to the objectives it seeks; it must only be '*reasonably related*' to specific sentencing factors and 'involve no greater deprivation of liberty than is '*reasonably necessary*' to achieve the goals of sentencing." *United States v. Zobel*, No. 11-3341, 2012 WL 4815377, at *13 (6th Cir. Oct. 11, 2012) (quoting 18 U.S.C. § 3583(d)(1)-(2)). Whether this condition is perfectly proportionate need not be decided because this condition is reasonably related and reasonably necessary and ensures that Mr. Inman has the best chance at rehabilitation.

Mr. Inman was also commanded, as another special condition, that he "shall not consume any alcoholic beverages." A prohibition on alcohol use is included in the battery of sex offender special conditions. This is based on the Probation Office's experience—and Mr. Inman's testimony—that depression often preceded times during which an individual would view child pornography. Because alcohol acts as a depressant, this prohibition served to prevent the start of a destructive pattern.

Nevertheless, Mr. Inman indicates that he does not consume alcoholic beverages, and there is no evidence to the contrary. [R. 61 at 10.] Consequently, this condition will be removed, and additionally, it will not be listed in the catalog of sex offender special conditions.[5]

**5**

As an initial matter, the Eastern District of Kentucky's standard sex offender condition that totally prohibited Mr. Inman from possessing or using a device capable of creating pictures or video has been modified. The revised condition will now be as follows: "the defendant shall not possess or use a device capable of creating pictures or video, without the approval of the probation officer." *See United States v. Phillips*, 370 F. App'x 610, 621 (6th Cir. 2010) (distinguishing a condition that permitted the USPO to approve a particular behavior from a condition with an absolute prohibition). This condition is designed to protect the public by preventing sex offenders from turning to the creation of child pornography as the other supervised release conditions restrict access to such materials.

Obviously not every defendant would undertake such an endeavor, but the consequences

---

[5] Importantly, there is a standard condition also related to alcohol use, and it will remain in effect. [R. 58 at 1 (stating "the defendant shall refrain from excessive use of alcohol").]

of those who would are so substantial that this condition is necessary. Additionally, this is not a blanket prohibition; it just requires disclosure and permission from the probation officer. And, "[p]resumably, a probation officer would not deny . . . the use of [these devices] in a manner that would enable legitimate professional pursuits or other activities that would contribute to . . . rehabilitation." *Id.* Consequently, the Court will modify Mr. Inman's sentence and impose the revised condition.[6]

**6**

The final condition the Court was instructed to consider is the prohibition on renting or using a post office box or a storage facility. Because of the method by which Mr. Inman committed this crime, this condition will be retained, but in a modified form.

The conduct which preceded this prosecution and conviction consisted of Mr. Inman downloading images from the Internet and saving them onto a portable flash drive. [R. 61 at 3.] That flash drive was inserted into two computers, one of which allowed access to the illegal images. There is no evidence that the flash drive was filled with illegal images and then mailed. But, when Mr. Inman's computer access is restricted, receiving such a drive through the mail could easily take place, negating the need to download images. Receiving and storing such contraband in a location away from one's residence and vehicle would reduce the chance of being caught, and it would circumvent the rehabilitation that supervised release is supposed to provide. By keeping this condition in place, the probation officer will be more capable of ensuring the public is protected and Mr. Inman's efforts at rehabilitating are not frustrated.

---

[6] The opinion remanding this case mentioned Mr. Inman's restricted access to computers, but did not hold that the Court should reexamine that condition. [R. 72 at 4.] The revised standard sex offender conditions did not alter the language for this particular provision. It will remain as it was originally imposed.

There will, however, be two modifications to this condition. First, the probation officer will be granted autonomy to approve the use of a post office box or storage facility if that is deemed to be in Mr. Inman's best interest. The new condition will be as follows: "The defendant shall not rent or use a post office box or storage facility, without the approval of the probation officer." The second modification will reduce the time period Mr. Inman must comply with this requirement to ten years.

### III

Pursuant to the Sentencing Reform Act of 1984 as modified by subsequent case law, the Court finds that the following sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). Accordingly, it is the judgment of the Court that the defendant, Brandon M. Inman, upon release from the custody of the Bureau of Prisons is subject to the supervised release conditions as put forth in the Court's previous judgment [R. 58] with the following modifications:

(1)     Life supervision will be imposed, but there will be a re-evaluation of this condition at a hearing scheduled ten years after release from imprisonment.

(2)     Mr. Inman shall submit to one drug test within fifteen days of release from imprisonment and at least two periodic drug tests thereafter. This condition will terminate ten years from the date of release.

(3)     Mr. Inman shall submit to the prescription drug requirements set forth as a condition in the prior judgment. This condition will terminate ten years from the date of release.

(4)     Mr. Inman shall provide the probation officer with access to any requested financial information. This condition will be re-evaluated at Mr. Inman's scheduled hearing.

(5)     The prohibition on Mr. Inman consuming alcoholic beverages is removed.

(6)    Mr. Inman shall not possess or use a device capable of creating pictures or video, without the approval of the probation officer.  This condition will be re-evaluated at Mr. Inman's scheduled hearing.

(7)    Mr. Inman shall not rent or use a post office box or storage facility, without the approval of the probation officer.  This condition will terminate ten years from the date of release.

This 10th day of May, 2013.

**Signed By:**

*__Gregory F. Van Tatenhove__*

**United States District Judge**